UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANDREW P.,

                 Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

                 Defendant.

_____

**DECISION AND ORDER**

1:23-CV-00029 EAW

## <u>INTRODUCTION</u>

Represented by counsel, Plaintiff Andrew P. ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 6; Dkt. 7), and Plaintiff's reply (Dkt. 8). For the reasons discussed below, the Commissioner's motion (Dkt. 7) is granted, and Plaintiff's motion (Dkt. 6) is denied.

## BACKGROUND

Plaintiff protectively filed his applications for DIB and SSI on November 4, 2020. (Dkt. 5 at 24, 104-05).[1]  In his applications, Plaintiff alleged disability beginning June 14, 2019, due to "knee pain (both knees); sciatica; lumbar pain in back; pain in left hip; Hepatitis C; thumb pain (both thumbs); herpes; high blood pressure; [and] acid reflux." (*Id.* at 24, 73, 89).  Plaintiff's applications were initially denied on March 22, 2021.  (*Id.* at 24, 144-48).  A telephone hearing was held before administrative law judge ("ALJ") A. Benton on January 18, 2022.  (*Id.* at 24, 42-71).  On February 2, 2022, the ALJ issued an unfavorable decision.  (*Id.* at 21-35).  Plaintiff requested Appeals Council review; his request was denied on November 16, 2022, making the ALJ's determination the Commissioner's final decision.  (*Id.* at 9-15).  This action followed.

## LEGAL STANDARD

### I.    District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more

---

[1]     When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.   <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id*. §§ 404.1520(c), 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a

finding of "not disabled."  If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  *Id.* §§ 404.1520(d), 416.920(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id*. §§ 404.1509, 416.909, the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id*. §§ 404.1520(e), 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id*. §§ 404.1520(f), 416.920(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id*. §§ 404.1520(g), 416.920(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

- 4 -

## DISCUSSION

### I.  The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920.  Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act on December 31, 2021.  (Dkt. 5 at 26).  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since June 14, 2019, the alleged onset date.  (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairment of degenerative disc disease of the lumbar spine.  (*Id.*).  The ALJ further found that Plaintiff's medically determinable impairments of acid reflux, a head injury, finger injury, Hepatitis C, alcohol dependence, hip and knee complaints, hyperlipidemia, depressive disorder, and antisocial behavior disorder were non-severe.  (*Id.* at 27-29).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing.  (*Id.* at 29).  The ALJ particularly considered the criteria of Listing 1.15 in reaching her conclusion.  (*Id.* at 29-30).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that Plaintiff:

> can occasionally climb ramps and stairs, but can never climb ladders or scaffolds.  [Plaintiff] can occasionally stoop, kneel, and crouch, but can never crawl.  [Plaintiff] can only have occasional exposure to workplace hazards such as unprotected heights, and moving mechanical parts.

(*Id.* at 30).   At step four, the ALJ found that Plaintiff was unable to perform any past relevant work.  (*Id.* at 33).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of mail clerk, marker, and router.  (*Id.* at 34-35).  Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 35).

## II.   The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error

Plaintiff asks the Court to remand this matter to the Commissioner, arguing that the ALJ failed to properly evaluate Plaintiff's difficulty with authority and adult antisocial disorder.  (Dkt. 6-1 at 1, 9-12).  Because the Court finds that the ALJ carefully considered Plaintiff's limitations caused by his mental impairments, including his antisocial disorder and difficulty with authority, when assessing the RFC, remand is not required on this basis.

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).   While an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in h[er] decision," *id.*, an ALJ is not a medical professional, and therefore she "is not qualified to assess a claimant's RFC on the basis of bare medical findings," *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation and citation omitted).  At bottom, "[a]n RFC finding is administrative in nature, not medical, and its determination is within the province of the

ALJ, as the Commissioner's regulations make clear." *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021) (finding it was proper for the ALJ "pursuant to his statutory authority . . . [to] consider[ ] the medical and other evidence in the record in its totality to reach an RFC determination"); *see also Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) ("Where . . . the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." (quotations, citations, and alteration omitted)).

Plaintiff does not appear to contest the ALJ's finding that his mental impairments were non-severe; rather, he contends that despite the finding the mental impairments to be non-severe, the ALJ failed to account for them in the RFC.  (*See* Dkt. 6-1 at 12 ("The ALJ needed to fully and fairly account for that in the RFC—even if he believed Plaintiff's antisocial behavior disorder was only non-severe.")).  To that end, it is well-settled that an ALJ must consider both Plaintiff's severe and non-severe impairments when assessing the RFC.  *See Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012) ("A RFC determination must account for limitations imposed by both severe and nonsevere impairments."); *see also Grant v. Saul*, No. 3:18-CV-00261 (KAD), 2020 WL 1307106, at *6 (D. Conn. Mar. 18, 2020) (explaining that an ALJ is required to consider non-severe impairments when fashioning the RFC).

Here, at step two, the ALJ assessed several non-severe impairments, including depressive disorder and antisocial behavior disorder.  The ALJ considered these impairments in connection with the four broad areas of mental functioning (*i.e.*,

understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself), and found that Plaintiff had mild limitations in each of these categories. (Dkt. 5 at 28).

For understanding, remembering, or apply information, the ALJ noted that Plaintiff testified during his hearing to having occasional memory lapses, but that this testimony was contradicted by medical observations in the record, including reports of good memory, normal memory, and memory within normal limits, as well as medical observations of cognitive abilities within normal limits. (*Id*.).

For interacting with others, the ALJ noted that the "obvious" support for a limitation in this area was Plaintiff's term of probation for firing a gun into the air to persuade a roommate/tenant to leave. (*Id*.). The ALJ further noted Plaintiff's self-reports of having anger issues and not liking interactions with others, but that this testimony was contradicted by providers describing Plaintiff as calm, cooperative, or pleasant. (*Id*.). The ALJ concluded that "[w]hile his outburst supports a limitation, the numerous descriptions of a pleasant, calm, cooperative individual are far more plentiful," which was consistent with no more than a mild limitation for interacting with others. (*Id*.).

For concentrating, persisting, or maintaining pace, the ALJ noted Plaintiff's testimony that he sometimes has trouble maintaining concentration and focus, and there were some clinical observations of a concentration deficiency. (*Id*.). However, the record

also included descriptions of intact attention or concentration, or instances where providers declined to check a box for the presence of attention/concentration issues. (*Id.*).

Finally, the ALJ explained that for adapting or managing himself, Plaintiff's gun incident reflected a lack of impulse control, but there were no additional evidentiary instances of impulse control, and Plaintiff's insight and judgment were described as fair or within normal limits. (*Id.*).

Although he concluded that Plaintiff's mental impairments were non-severe, and further that Plaintiff had only mild limitations in each of the categories of mental functioning, the ALJ went on to consider these impairments when assessing the RFC. Contrary to what Plaintiff's argument suggests, the ALJ specifically considered Plaintiff's anti-social behavior disorder, including Plaintiff's reports of difficulty interacting with others. (*See, e.g., id.* at 30-31 (discussing that Plaintiff "detailed being on probation because he became very frustrated with a roommate/tenant who would not leave, so he fired a gun into the air. . . .  He says that he was diagnosed with adult anti-social behavior because he has difficulty interacting with others and is easily angered.")).  However, as explained above, the ALJ also noted that other evidence in the record, including reports from medical providers, supported that he was pleasant, calm, cooperative, and that this evidence was "far more plentiful."

In addition, the ALJ considered that Plaintiff reported he experiences depression, which can decrease his memory, concentration, and focus. (*Id.* at 31).  The ALJ explained that, out of an abundance of caution and in consideration of these reported attention deficit

allegations, the RFC requires that Plaintiff have only occasional exposure to potential workplace hazards, such as unprotected heights and moving mechanical parts. (*Id.* at 32).

Finally, the ALJ considered the opinion evidence in the record assessing Plaintiff's work-related mental functional limitations:

> At the state agency level, the initial and reconsideration psychological consultants both determined that the claimant's mental health allegations are non-severe, resulting in no more than mild limitations. An independent psychological consultative examiner also opined that the claimant's mental health is a non-severe condition, noting a mild impairment in regulating emotions and controlling behavior. Finally, the claimant's mental health provider noted some difficulties concentrating, but rated over 20 mental health traits as either "unlimited" or "limited but satisfactory". His provider went on to opine that the claimant is not a malingerer, can sustain full-time employment, and is competent to manage his own funds.
>
> All of these opinions of non-severe mental health concerns are persuasive and adopted. All of the mental health professionals acknowledged mild mental health limitations, yet clarified that none of the limitations are work preclusive. They supported their opinions by detailing some concentration and behavioral concerns as noted above. The persuasive value of these opinions is magnified because the opinions are completely consistent with one another and with the mental health records cited.

(*Id.* (citations omitted)).

Both the ALJ and the opinion evidence in the record assessed that Plaintiff has mild mental limitations which, coupled with the discussion of the evidence by the ALJ, is consistent with an RFC which includes no mental limitations. *See, e.g., Katherine R. v. Comm'r of Soc. Sec.*, No. 1:20-CV-01055-MJR, 2021 WL 5596416, at *7 (W.D.N.Y. Nov. 30, 2021) ("Where . . . an ALJ's findings of only mild limitations in mental functioning are supported by substantial evidence in the record, the ALJ is not required to include mental limitations or restrictions in the RFC."); *see also Lynette W. v. Comm'r of Soc. Sec.*, 19-CV-1168-FPG, 2021 WL 868625, at *4 (W.D.N.Y. Mar. 9, 2021) ("mild limitations do not

necessarily require the addition of mental limitations in the RFC" (quotations and citations omitted)); *Jane M. A. v. Comm'r of Soc. Sec.*, No. 19-cv-00808, 2021 WL 63066, at *5 (W.D.N.Y. Jan. 7, 2021) ("there are no regulations that mild limitations require mental limitations in the RFC").  This is not a case where the ALJ neglected to discuss Plaintiff's non-severe mental impairments when assessing the RFC.  Rather, the ALJ discussed Plaintiff's mental limitations at length when assessing the RFC, and it is clear to the Court how the ALJ evaluated Plaintiff's mental impairments and assessed the RFC to not include additional limitations.  Namely, both the opinion evidence and treatment notes support that Plaintiff's mental functioning was intact—in other words, that Plaintiff largely possessed the ability to understand directions, use reason and judgment, interact with others, and sustain an ordinary routine—and therefore no limitations were required.

Plaintiff identifies evidence he argues supports the inclusion of mental limitations in the RFC—namely, that Plaintiff's antisocial behavior disorder caused him to have difficulty with authority, he blamed others for his problems, his demeanor was defensive, and he was irritable.  (*See* Dkt. 6-1 at 10).  Plaintiff also points to his report of an incident with a firearm, wherein he shot a shotgun in the air when he was frustrated with a tenant, whom he wanted to "kill . . . for that still."  Plaintiff further reported that he is a "ticking time bomb" and angry, because he lets issues build up.  (*Id*. at 11-12).

The Court is not persuaded by Plaintiff's arguments in this respect.  Much of the evidence cited by Plaintiff is based on his own subjective complaints of his mental functioning.  It is well-settled that while the ALJ is required to consider Plaintiff's subjective complaints, the ALJ is not required to grant disability benefits based on

subjective complaints alone, particularly when those subjective complaints are contradicted by other evidence in the record. *See Conetta v. Berryhill*, 365 F. Supp. 3d 383, 406 (S.D.N.Y. 2019) ("case law holds that an ALJ is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record" (quotations and citations omitted)).

Here, the ALJ discussed Plaintiff's subjective reports of his mental functioning, including those caused by his anti-social disorder, but ultimately concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with other evidence in the record. (Dkt. 5 at 31). For example, the ALJ cited to and relied on the opinions of the mental health experts, who assessed Plaintiff and found that he had non-severe mental impairments with only mild limitations in some areas of mental functioning. (*See, e.g., id*. at 32, 668-72 (discussing Mental Residual Functional Capacity Questionnaire completed by Susan Symonds, MSCIASAC-MC, who noted that Plaintiff had difficulties concentrating, but rated over 20 mental health traits as either "unlimited or very  good" or "limited but satisfactory," and opined that Plaintiff was not a malingerer, his impairments would "never" cause him to be absent from work, and he could sustain fulltime competitive employment); *id*. at 32, 414-17 (discussing opinion offered by consultative examiner Susan Santarpia, Ph.D., who indicated that Plaintiff's mental health impairments were non-severe, with only mild impairment in regulating emotions, controlling behavior, and maintaining well-being); *see also id*. at 28 ("The claimant self-reports having anger issues and not liking interactions with others.  In

contrast, providers describe him as calm and cooperative, or as cooperative.  He is also described as pleasant.  While his outburst supports a limitation, the numerous descriptions of a pleasant, calm, cooperative individual are far more plentiful." (citations omitted))).

It is the ALJ's duty to resolve conflicts among evidence in the record, *see Micheli v. Astrue*, 501 F. App'x 26, 29-30 (2d Cir. 2012) (explaining that "because it is the sole responsibility of the ALJ to weigh all medical evidence and resolve any material conflicts in the record where the record provides sufficient evidence for such a resolution, the ALJ will weigh all of the evidence and see whether it can decide whether a claimant is disabled based on the evidence he has, even when that evidence is internally inconsistent"); *see also Smith v. Berryhill*, 740 F. App'x 721, 725 (2d Cir. 2018) ("The ALJ could have reached a different conclusion on the disputed medical record, but we defer to the ALJ's disability determination when it is supported by substantial evidence."), and therefore it was entirely proper for the ALJ to consider all the evidence in the record and assess an RFC supported by the record as a whole, rather than an RFC based solely on Plaintiff's reports of his mental functioning.

In sum, it is clear from the written determination how the ALJ arrived at the assessed RFC, which is supported by substantial evidence in the record.  Accordingly, remand is not required on this basis.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 7) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 6) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: February 27, 2024
       Rochester, New York